HERMAN KOUNTZE and Others, as Executors, etc., of AUGUSTUS KOUNTZE, Deceased, Plaintiffs, v. FANNIE IDA HELMUTH, Defendant.

*Restrictive covenants running with land — marketable title — change in the character of the locality — waiver of defect in a title.*

A written agreement by the owners, as tenants in common, of the lands composing one side of a city block, that they would not erect any buildings, other than dwelling-houses at least two stories high and of brick or stone, or churches of the same materials, on the lands, or any part thereof, etc., and that in all future sales of any of the land by the parties to the agreement the purchasers should

be required to come under and be bound by such restrictions, and that the same should run with the land, and that any party aggrieved by any violation thereof might apply for relief by injunction or otherwise; and a subsequent agreement by the owners of the several lots, then constituting the same entire block front, that the front of any houses to be erected on the lots should be set back on a uniform line of five feet from the street, and that the intervening space should be kept open, and that such covenant should run with the land and be binding on all future owners, and that all deeds, executed by the parties, of any of the lots should be made subject to the conditions of the agreement:

*Held*, to constitute incumbrances which, while they were in existence, prevented the conveyance of a good marketable title to one of the lots covered thereby.

A purchaser of real estate is not bound, under a contract providing for the giving of a general warranty full covenant deed conveying the land in fee simple, to accept title to premises incumbered by restrictions as to the character of buildings to be erected thereon and prohibiting the building within a certain distance of the street line, which run with the land and constitute reciprocal easements, and which, in case of their violation, would subject the taker of the title to actions for damages by adjoining owners.

In an action by the purchaser in a contract for the sale of real estate, against the vendor, to recover damages sustained through the inability of the vendor to give title by reason of restrictive covenants running with the land, it is not open to the defendant to introduce parol evidence for the purpose of showing whether the covenants were beneficial or otherwise.

Although the fact of a change in the character of the locality in question may induce a court of equity to refuse to specifically enforce a restrictive building covenant, such change does not present an answer to an action at law, which may be brought by one interested in the covenant, for damages sustained by reason of its violation.

The fact that, after the execution of a contract for the sale and purchase of real estate, the purchaser agreed to sell to the vendor's husband certain book cases attached to the premises, which the latter commenced to take them down, but stopped when the purchaser suggested and advised that, as the examination of the title had not been completed and the title found satisfactory, the moving of the book cases should be deferred:

*Held*, not to constitute an acceptance of the title by the purchaser, or a waiver of any existing defects therein.

Motion by the defendant, Fannie Ida Helmuth, for a new trial, on exceptions taken by defendant on a trial at the New York Circuit, and directed to be heard in the first instance at the General Term, after a verdict for the plaintiffs directed by the court.

*George W. Van Slyck*, for the plaintiffs.

*L. Laflin Kellogg*, for the defendant.

KOUNTZE *v.* HELMUTH. **345**

Lawrence, J.:

On the 21st of September, 1888, the plaintiffs' testator and defendant, entered into an agreement in writing, whereby the defendant agreed to sell to the plaintiffs' testator, and the latter agreed to purchase, the premises situated on the northerly corner of Madison avenue and East Forty-first street, in the city of New York, for $105,000, $2,000 to be paid on the execution of the agreement and the balance on the taking of the title.

The defendant agreed, on receiving such payment, to execute, acknowledge and deliver to the plaintiffs' testator a proper deed containing a general warranty and the usually full covenants for the conveying and assuring to him, or his assigns, the fee simple of the said premises, free from all incumbrance, said deed to be delivered on the 22d of October, 1888, at twelve o'clock m., at the office of J. Romaine Brown & Co., at which time the plaintiffs' testator was to have possession of said premises.

On examining the title the attorney employed by the plaintiffs' testator discovered matters which he alleged to be defects in the title. The time for completion was first extended to the twenty-fourth of October, and, at the request of the defendant, again extended until the 30th of October, 1888, on which day the parties met, and the attorney still deeming the title defective, the purchase-money and a full covenant warranty deed were tendered by the respective parties, and a demand for the return of the $2,000 and the expenses incurred was made of the defendant, which was refused. All further negotiations then ceased.

This action is brought to recover the damages alleged to have been sustained by reason of the inability of the defendant to comply with the terms of the agreement. The defendant, in her answer, denies that the alleged defects complained of by the plaintiffs, in point of fact, existed; that, if they existed, the plaintiff's testator had waived them; and also set up as counter-claims, first, that Mr. Kountze took possession of the freehold and sold certain portions thereof by means whereof the defendant sustained damage in the sum of $1,500; and, second, that by reason of the failure of the plaintiffs' testator to carry out and perform his contract, the defendant was put to loss and damage in removing her property from said

premises, and lost the rental value thereof, amounting, in all, to the sum of $9,000.

The defects in the title relied upon by the plaintiff are these :

*First.* That on the 4th of June, 1857, Margaret Burr, Mary Burr and Sarah Burr being then the owners, as tenants in common, of the lands on the easterly side of Madison avenue, lying between Fortieth and Forty-second streets, entered into a written agreement that they would not erect any buildings, other than dwelling-houses, at least two stories high, of brick or stone, or churches of the same materials on the lands or any part thereof, excepting ordinary yard appurtenances and also no livery stables, slaughter-houses and several other erections and occupations known as nuisances in the law should be made, erected or permitted on said land or any part thereof, and further, that in all future sales, leases or other disposition of any of the land aforesaid by the parties to said agreement, the purchasers, lessees or occupants shall be required to come under and be bound by such restrictions, and that the same shall run with the land, and that any party hereto or person aggrieved by any violation thereof might apply for relief by injunction or otherwise.

*Second.* The second defect in the title pointed out by the plaintiffs is an agreement between Sarah Burr, R. H. L. Townsend and Edward Livermore, dated October 1, 1866.

The parties to that agreement owned the entire block on the easterly side of Madison avenue, Sarah Burr owning seven lots, Townsend one lot and Livermore having a contract to purchase a portion of the property. By that agreement the parties covenanted and agreed that the front of any houses to be erected on the said lots shall be set back on a uniform line of five feet from the easterly side of Madison avenue, and that the said space of five feet should forever hereafter be kept open for a court-yard and should not be built upon or obstructed by any erection whatever, other than by windows, stoops or entrances, etc. It was further agreed that this covenant should run with the land and be binding on all future owners, and that all deeds executed by the parties of any of the said lots should be made subject to the conditions of the agreement.

*Third.* The third defect relied on by the plaintiffs is an encroachment, in the rear of the lot, by the wall of an adjoining house so

that the lot proposed to be conveyed is only ninety-nine feet eight inches instead of 100 feet in depth.

The learned justice before whom the cause was tried, after refusing to dismiss the complaint or to allow the defendant to go the jury upon certain points submitted, directed a verdict in favor of the plaintiffs and the case comes before us on exceptions to such ruling, and as to the reception or rejection of evidence offered on the trial.

We are of the opinion that the covenants in the two agreements above referred to, constitute incumbrances upon the property contracted to be conveyed and that while in existence the defendant could not convey to the plaintiff's testator the good marketable title to which he was entitled. (*Irving* v. *Campbell*, 121 N. Y., 353; *Moore* v. *Williams*, 115 id., 586.)

The covenants in each of the agreements are expressly stated to run with the land, and they constitute reciprocal easements, to which subsequent grantees become entitled, and by which they are bound. (*Lattimer* v. *Livermore*, 72 N. Y., 174; *Trustees of Columbia College, etc.,* v. *Lynch*, 70 id., 440; *Wetmore* v. *Bruce*, 118 id., 322; *Huyck* v. *Andrews*, 113 id., 81.)

The plaintiff was, in our opinion, entitled to rely upon his covenants, and it was, therefore, not error for the justice, before whom the cause was tried, to exclude the evidence offered by the defendant for the purpose of showing whether the covenants were beneficial or otherwise.

In *Moore* v. *Williams* (115 N. Y., 592), it is said : "A purchaser will not generally be compelled to take a title when there is a defect in the record title which can be cured only by a resort to parol evidence, or when there is an apparent incumbrance which can be removed or defeated only by such evidence."

The case of the *Trustees of Columbia College* v. *Thacher* (87 N. Y., 311), stands upon peculiar facts. In that case, it was held that, in view of the changed character of the Sixth avenue, the court would not, in the exercise of its discretion, sustain an action for the specific enforcement of certain restrictive covenants contained in an agreement between the plaintiffs, and one from whom the defendant, by sundry mesne conveyances, acquired title. But it was not held that one who violated such a covenant would not be liable to an action for damages by an owner of one of the lots referred to

in the agreement containing the restrictive covenants. (See, also, _Amerman_ v. _Deane_, 132 N. Y., 355.) There the court refused an injunction after the building which was erected in violation of the covenant had been completed, but it awarded damages. The plaintiff in this action was not bound to take a title which would subject him to an action for damages by adjoining owners.

The question put to the witness Pette in relation to the change in the character of the neighborhood was properly excluded because no such defense as it was intended to sustain is pleaded, and, also, because, as already stated, although the fact of such change may induce a court of equity to refuse to specifically enforce a restrictive covenant, such change does not present an answer to any action at law which might be brought by one interested in the covenant for damages sustained by reason of its violation.

The objection to the deficiency in the quantity of the land of four inches in the rear of the lot, where the price to be paid is as large as in this case, is also a grave objection to the marketable quality of the title under consideration, but having determined that the agreements of 1857 and 1866 so seriously affect the title as to justify the plaintiffs in refusing to complete, it is unnecessary to pass definitely upon that question.

The defendant strenuously contends, however, that even if the defects in the title referred to by the plaintiffs, existed, they were waived, and that, therefore, he cannot succeed in this action. In this contention, we think he must fail.

The alleged waiver is based upon the fact that in a conversation with the defendant's husband on the seventeenth of October, the plaintiffs' testator agreed to sell to Dr. Helmuth certain book-cases attached to the premises. On the next day the mechanics under Helmuth's direction commenced to take them down, but on the morning of the nineteenth the plaintiff's testator, by letter addressed to defendant's husband, "suggested and advised" that as the examination of the title had not been fully completed, and the title found satisfactory they should defer the moving of the book-cases.

We are unable on the facts to hold that the conversation which took place between the plaintiff's testator and the defendant's husband was an acceptance of the title by the plaintiff's testator, or a waiver of any existing defects. It is quite clear that the examination

had not then been completed. It seems to have been completed on the nineteenth of October. After that we find that two extensions were granted, the last of which is dated October 24, 1888, by which the time is extended to the thirtieth, and the last memorandum recites that it is granted at the request of Mrs. Helmuth. If there had been a waiver of the alleged defects in the title, or if the plaintiffs' testator had technically taken possession, by what occurred between him and Dr. Helmuth on the seventeenth of October, the defendant would hardly have asked an adjournment of the closing of the title. Beyond the transactions in regard to the book-cases there can be no pretense that the plaintiffs' testator ever exercised any acts of ownership over the premises, or should be even technically regarded as having taken possession of them, and we find nothing in that transaction upon which a waiver can be based. (*Bensel* v. *Gray*, 80 N. Y., 517.)

From what has been already said it is apparent that the counter-claims of defendant were properly dismissed. The plaintiffs' testator had exercised no acts of ownership over the book-cases. He had, in substance, agreed to sell them when the title was found to be good, and his letter, dated October eighteenth, is entirely inconsistent with the idea that he claimed to be the owner of them.

The plaintiff's objections to the title having been determined to be good, there was no foundation for the counter-claim for rent. No error, in our opinion, was committed in refusing to submit the question of waiver to the jury on the evidence before the court. Conceding the facts to be as claimed, there was, as matter of law, no waiver.

The defendant's exceptions should, therefore, be overruled, and judgment rendered for the plaintiff, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Exceptions overruled and judgment ordered for plaintiff, with costs.