**GORDON v. WOODS.**

**No. 4549.**

United States Court of Appeals
First Circuit.

May 22, 1951.

Morris Michelson, Boston, Mass., for appellant.

Robert A. B. Cook, Boston, Mass. (Phipps, Durgin & Cook, Boston, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of Massachusetts dated September 29, 1950, affirming orders of the referee in bankruptcy. It stems from the sale at public auction of the property of The Young Corporation, bankrupt, pursuant to the order of the referee.

The sale was held on April 25, 1950, and Gordon was the highest bidder. His bid of $95,100 was accepted by the auctioneer and

Gordon tendered two checks amounting to $9500.

Subsequently Gordon attempted to withdraw his bid chiefly on the ground that the property had been misrepresented, and on May 12, 1950, filed a "Petition for rescission of sale and return of deposit." This petition was heard on June 7, 1950, and was denied by the referee on August 11, 1950.

The referee's order denying Gordon's petition for rescission reads in part as follows:

"After due hearing, and upon consideration of the evidence presented, I find as follows:

"1. That the sale was properly conducted by the Trustee in Bankruptcy.

"2. The purchaser, Gordon, bought the Real Estate 'as is', and had ample opportunity to examine the property purchased.

"3. That the buildings purchased were in good condition.

"4. That the purchaser of the Real Estate in bidding for same did not rely on the written statement in the advertisement that 'Buildings well constructed, in good condition'.

"5. That Max Gordon has failed to sustain his burden of proof of any facts entitling him to rescission of the sale.

"It is, therefore, Ordered, Adjudged and Decreed that the petition of Max Gordon for Rescission of Sale and Return of Deposit be, and the same hereby, is, Denied."

The trustee filed a "Petition for Confirmation of Sale" on May 19, 1950. Hearing was held on said petition on May 23, 1950, and the sale was confirmed on the same day by order of the referee. Said order reads in part as follows:

"Ordered that the sale at auction of all the real estate of the bankrupt together with the buildings thereon, conducted by the trustee herein on the 25th day of April, 1950, be and the same hereby is in all respects confirmed and ratified and the said trustee is hereby authorized to deliver the property to the said Max Gordon, therefore, in accordance with the terms of said sale.

"It is

"Further Ordered that the said Max Gordon be and he hereby is ordered and directed to consummate the sale so made to him not later than thirty days from April 25, 1950."

Gordon on May 23, 1950, filed a "Motion for Continuance and Objection to Hearing at this Time Trustee's Petition for Confirmation of Sale" and this was denied on the same day by the referee.

On June 7, 1950, Gordon filed his "Objection to Referee Exercising Jurisdiction Over 'Petition for Rescission of Sale and Return of Deposit', and Motion that said Petition Be Heard and Determined by Judge (and Jury) of District Court." This motion was denied on the same day by the referee.

Gordon filed petitions for the review of said orders of the referee. These petitions were heard by the district court on September 28 and 29, 1950.

In its order of September 29, 1950, the district court stated:

"It Is Hereby Ordered and Decreed that the Order of the Referee, in all respects, be and it hereby is affirmed."

The district court in its memorandum of the same date stated that Gordon's " * * * efforts to resell this property to other competing bidders were unsuccessful, and his real reason for wanting to rescind the sale seems to be that he made a bad buy. These auction sales are not conducted for the benefit of would-be real estate operators, and one who bids in accordance with the terms of the sale buys something permanently."

Gordon in his statement of points states that the district court erred in its order and decree of September 29, 1950; in affirming the referee's confirmation of the sale to him; in affirming the referee's denial of his petition for rescission; in affirming the referee's order that he consummate the sale and in ordering him to accept the deed tendered by the trustee in bankruptcy.

█ It is evident from the record that the findings of fact of the referee as affirmed by the district court are not clearly erroneous and should not be disturbed on this appeal. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A.; 2 Collier on Bankruptcy (14th Ed.) § 25.30, p. 960.

There is no doubt but that there was a sale in this case and that the property was knocked down to Gordon by the auctioneer. Gordon, in fact, signed a memorandum[1] in which he agreed to purchase the property.

██ The period between the time the auctioneer's hammer fell and the time the sale was confirmed was not a respite during which Gordon could reconsider the wisdom of his purchase and withdraw his offer, without good cause, and thereby avoid liability. Confirmation is a device for the protection of the bankrupt estate. The stability of judicial sales is to be maintained and a bidder should not be allowed to trifle with or baffle them by the means Gordon employed here.

█ In Camden v. Mayhew, 129 U.S. 73, 85, 86, 9 S.Ct. 246, 249, 32 L.Ed. 608, the court said: "Where a purchaser refuses, without cause, to make his bid good, he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale is had. It was so held in Blossom v. [Milwaukee & C.] Railroad Co., 1 Wall. [655], 656, [17 L.Ed. 673], where it was said

1. "PETITIONER'S EXHIBIT 4.

April 25, 1950.

"I/We Dugan Bros. Construction Co. and Max Gordon do hereby agree to purchase a certain parcel of real estate as follows:

All Real Estate except W.H.

for the sum of Ninety-Five Thousand One Hundred dollars of which 10%, Nine Thousand Five Hundred 00/100, is paid herewith as a deposit, the balance to be paid upon conveyance of the premises within thirty (30) days from date. I/We do further agree that this sale is subject to confirmation by the U. S. Court, and in the event I/we do not completely perform within said thirty (30) days the seller may retain the 10% deposit as liquidated damages or compel specific performance hereof.

(s) Dugan Bros. Construction Co.

Max Gordon,

Purchaser."

(Gordon was the sole owner of the business conducted under the name of Dugan Bros. Construction Co.)

that a purchaser or bidder at a master's sale in chancery subjects himself *quoad hoc* to the jurisdiction of the court, and can be compelled to perform his agreement specifically. In Lansdown v. Elderton, 14 Ves. 512, a motion that the person reported to be the best bidder before the master pay within a given time the purchase money, or stand committed, was sustained by Lord Chancellor Eldon, who observed that the purchaser could not be permitted to disobey an order, more than any other person. That case was followed in Brasher v. Cortlandt, 2 Johns. Ch.[N.Y.] [505] 506, where Chancellor Kent, after observing that the purchaser ought to be compelled to complete the purchase, said: 'If no order of this kind could be made in this case, it would follow that not only the purchaser, but the committee of the lunatic, would be permitted to baffle the court, and sport with its decree. * * * I have no doubt the court may, in its discretion, do it in every case where the previous conditions of the sale have not given the purchaser an alternative.' See, also, Blossom v. [Milwaukee & C.] Railroad Co., 3 Wall. 196, 207 [18 L.Ed. 43]; Smith v. Arnold [Fed.Cas.No.13,004], 5 Mason, 414, 420; Requa v. Rea, 2 Paige [N.Y. 339], 341; Casamajor v. Strode, 1 Sim. & S. 381; Anderson v. Foulke, 2 Har. & G. [Md.] 346, 362, 373. If, as is clear, the purchaser can be required, by rule or attachment, to pay into court the entire sum bid by him, and thus complete his purchase, it is difficult to see why a bidder sought to be made liable for a deficiency resulting from a resale caused by his refusal to make his bid good may not be proceeded against in the same suit by rule, or in any other mode devised by the court that will enable him to meet the issue as to his liability. That issue in the present case was tried upon pleadings and proof, and there is no pretense that the appellant had not full opportunity to present his defense before the final order now under review was made."

The case of In re Lane Lumber Co., 9 Cir., 207 F. 762, 765, did not involve a public auction but it was concerned with a judicial sale. The court overruled petitioner's contention "that he had a right to withdraw his offers or bids at any time before the acceptance thereof by the trustee because they were merely offers to contract in the future."

In re Huguenot Pub. Co., Inc., Taylor v. Folsom, 2 Cir., 83 F.2d 258, 259, the court said: "When a purchaser at a judicial sale has defaulted, the vendor may either obtain an order confirming the sale and directing the purchaser to complete, or, if he prefers, may obtain an order directing a resale at the purchaser's risk and requiring the purchaser to make good any loss due to receipt of a lower price on the second sale. * * *"

In the instant case an order of confirmation was obtained and Gordon was directed "to consummate the sale so made to him not later than thirty days from April 25, 1950."

In the case of In re Rival Knitting Co., 2 Cir., 289 F. 960, 963, the court said: "* * * after he refused to carry out the terms of his bid, the court, without affirming the sale by a formal order, could hold him to his offer and could order a resale in the meantime at his risk, both in respect to the expenses of the resale and any deficits resulting therefrom."

Here, the referee, after an extensive hearing, confirmed the sale and found in effect that Gordon's attempt to withdraw or rescind was without merit and that his refusal to make his bid good was without good cause. The district court affirmed and we are not disposed on the facts of this case to disturb the orders of the court or of the referee.

At the hearing we were informed that, subsequent to the filing of this appeal, the parties entered into a stipulation, approved by the district court, which provided, among other things, for the resale of the property in question and that the resale has been carried out. That stipulation is not part of the record before us. We feel, however, that the district court will give effect to it in the further disposition of this case.

The judgment of the district court entered September 29, 1950, is affirmed.